**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0258n.06

No. 12-5450

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **FILED** |
| **Plaintiff-Appellee,** | ) | *Mar 13, 2013* |
| | ) | DEBORAH S. HUNT, Clerk |
| **v.** | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **DEON T. PATTON,** | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE:    MERRITT, MARTIN and CLAY, Circuit Judges.

**MERRITT, Circuit Judge.**  Defendant Deon Patton is serving a 70-month sentence after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He appeals the district court's partial denial of his motion to suppress evidence found in his vehicle after a canine alert incident to a lawful stop.  He also appeals his within-guidelines sentence, contesting the calculation of his criminal history category and the failure of the district court to vary downward from the guideline range.  For the following reasons, we affirm the judgment of the district court.

**I.**

We first turn to Patton's appeal of the partial denial of his motion to suppress.  In the early morning hours of November 28, 2009, police responded to a 911 call concerning a break-in at a residence in Knoxville.  The caller identified the suspect as her ex-boyfriend, defendant Deon Patton,

and described his vehicle. The responding police officer parked a distance away from the house and proceeded on foot. As the officer walked toward the residence, a white vehicle slowly approached him and stopped. The driver identified himself to the officer as Deon Patton, the name given to the officer as the suspect in the break-in. The officer asked Patton to step out of the car. Patton complied, but locked his car upon exiting. The officer then placed Patton in handcuffs because he believed he was the perpetrator of the break-in and because Patton appeared to be under the influence of drugs or alcohol.

Patton was placed in the back of the patrol car as the back-up officer and narcotics-detection dog arrived on the scene. The dog was used to sniff the parked vehicle and alerted to the presence of narcotics by sitting down near the car door. The officer stated his intention to search the car based on the dog alert and asked Patton for the keys to the car. Patton refused at first, but then agreed to provide the keys if his handcuffs were loosened. Patton was removed from the patrol car, his cuffs loosened and he gave the car keys to the officer. As Patton was being put back into the patrol car he said, "Hey, I ain't going to lie to you. I've got a gun in the car." The police conducted the search and found a handgun and six rounds of ammunition in a bag on the back seat of defendant's vehicle. Additional ammunition was also found in the glove box, as well as a cigarette wrapper with white residue on it.[1]

Patton moved to suppress the gun and ammunition on the ground that the search was illegal because it was conducted without a warrant in violation of the Fourth Amendment. The officer who

---

[1]The "white residue" was never tested, so its composition is not known.

handled the dog testified about his partnership with the narcotics dog and the monthly training the two did together. He testified that the dog is tested regularly for reliability and is certified by the Police Working Dog Association. The officer also testified that this particular dog was generally reliable in actual working situations out on patrol.

In the Report and Recommendation, the magistrate judge denied the motion to suppress in part and granted it in part. Report and Recommendation, Dec. 28, 2010. He found the initial stop of Patton to be lawful under *Terry v. Ohio*, 392 U.S. 1 (1968). He also found the dog sniff of the car to be lawful and that the alert by the dog to supply the necessary probable cause to search the car, so the physical evidence of the firearm and ammunition found in the car need not be suppressed. The magistrate judge also found that Patton volunteered the information about a firearm in his car so that statement need not be suppressed.[2] Patton objected to the partial denial of the motion to suppress, but the district court overruled the objections and adopted the Report and Recommendation in full. Mem. and Order, Feb. 10, 2011.

On appeal, Patton first argues that the search of his vehicle without a warrant incident to his detention by police is a violation of the Fourth Amendment. He argues that he was in custody (handcuffed in the back of a patrol car) and no exigent circumstances necessitated a search of the locked car without a warrant. However, Patton misconstrues the nature of the search. The search was not incident to his arrest but, instead, was justified because a trained narcotics dog on the scene

---

[2]Other statements Patton made to police while he was in the patrol car in response to direct questions were suppressed because Patton was "in custody" and did not receive *Miranda* warnings before the questioning. These statements are not at issue in this appeal.

3

alerted to his vehicle.  It is well settled that a "a canine sniff is not a search within the meaning of the Fourth Amendment" if the canine  is "lawfully . . .  present at the location where the sniff occurs." *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998); *see also Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005) (a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment).  In addition, an alert by a properly trained narcotics dog while sniffing a vehicle is sufficient to establish probable cause for a search of the vehicle.  *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994).

Patton also contends that the government failed to meet its burden of establishing that the narcotics dog was reliable and properly trained.  The Supreme Court recently reaffirmed that the long-standing "totality-of-the-circumstances" approach is all that is required to support a narcotics dog's reliability to detect drugs during a search. *Florida v. Harris*, ___ U.S. ___, No. 11-817, 2013 WL 598440 (Feb. 19, 2013) (rejecting the State of Florida's strict evidentiary checklist to assess a drug-detection dog's reliability).  The Court held that if the government has produced proof from controlled settings that the dog has performed reliably, the defendant should have an opportunity to challenge the evidence through cross-examination or introducing its own fact or expert witnesses to contest the training or testing standards as flawed or too lax.  *Id*. at *7.  The judge should then consider all the evidence and apply the usual test for probable cause: whether all the facts surrounding the alert would make a reasonably prudent person think that a search would reveal evidence of a crime.  *Id*.

The record in this case amply supports the district court's determination that the dog's alert on Patton's vehicle gave the officer probable cause to search it. The government introduced substantial evidence of the dog's training, certification and accuracy rate of "over 90%." The magistrate judge found, as a factual matter, that the dog was a properly trained and reliable narcotics dog that had alerted to Patton's vehicle. Patton points to no evidence on appeal to challenge that finding. Looking to the "totality-of-the-circumstances," the evidence presented at the suppression hearing supports the finding that the narcotics dog used to sniff Patton's car was reliable and the police had probable cause to search the vehicle.

## II.

Patton received a sentence of 70 months, at the low end of the applicable range of 70-87 months imprisonment. Defendant contests the calculation of his criminal history category, arguing that two of his prior convictions should have been counted as a single offense because he was sentenced for both of them on the same day. He also contends that it was an abuse of discretion for the district court to deny his motion for a downward variance, arguing that his sentence was "greater than necessary" to satisfy the factors enumerated under 18 U.S.C. § 3553(a).

## A. Calculation of Criminal History Points

Patton argues that he should have received only 7 criminal history points instead of the 10 he received.[3] He argues that two offenses listed in the Presentence Report should have been counted

---

[3]The additional three points bumped up Patton's Criminal History Category from a IV to a V. A Criminal History Category of IV with a total offense level of 21 would have given him a range of 57-71 months instead of the 70-87 month range he received.

as a single sentence because he was sentenced for both offenses on the same day. *See* PSR at ¶¶ 47 & 49. However, same-day sentencing counts as a single offense only if there is no "intervening arrest" between the offenses. U.S.S.G. § 4A1.2(a)(2).[4] The two offenses Patton wants consolidated were committed six months apart and separated by an intervening arrest. He was arrested on December 19, 1997, for possession with intent to sell at least one-half gram of cocaine. PSR at ¶ 47. Patton was arrested again on June 30, 1998, and charged with escape from jail for the December 1997 offense. *Id*. at ¶ 49. The two arrests are related only in that Patton escaped from prison while serving time for the crimes committed in December 1997. The cases were not consolidated and were charged on different days six months apart under two different docket numbers. Because the offenses were separated by an intervening arrest and there is no indication that they were consolidated, the district court did not err in counting the resulting convictions separately. *See United States v. Carson*, 469 F.3d 528, 531 (6th Cir. 2006) (no functional consolidation when

---

[4]U.S.S.G. § 4A1.2(a)(2) provides as follows:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). *If there is no intervening arrest*, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

(Emphasis added.)

offenses proceed to sentencing under separate docket numbers, cases are not factually related, and there was no order of consolidation).

## B. <u>Downward Variance</u>

The defendant also contends that the district court erred in not granting his request for a downward variance. Patton argues that his 70-month, bottom-of-the-guideline range sentence is greater than necessary because at the time of his arrest he was employed and was an important part of his grandchildren's lives and they will suffer hardship while he is in prison. These aspects of defendant's character were thoroughly covered by his counsel at the sentencing hearing and the district court was well aware of these factors when it denied the downward variance. The district court noted defendant's extensive criminal record as a primary factor in declining to grant the request for a downward variance. Because the sentencing transcript makes clear that the district court considered all these mitigating factors when imposing Patton's sentence, it was well within its discretion to deny the request for a downward variance and there is no ground on appeal to question the denial. *See United States v. Trejo-Martinez*, 481 F.3d 409, 413-14 (6th Cir. 2007).

For the foregoing reasons, the judgment of the district court is affirmed.